HUDSON VALLEY RAILWAY COMPANY, Plaintiff, *v.* UNITED TRANS-PORTATION COMPANY, INC., Defendant.

Supreme Court, Saratoga County, August 28, 1926.

Omnibuses — action to restrain defendant from operating bus line — in 1913 defendant obtained certificate of convenience and necessity from Public Service Commission without notice to plaintiff, competing carrier — defendant suspended operations from 1914 to 1926 — notice to plaintiff required by Public Service Commissions Law, §§ 23 and 53 as law was in 1913 — certificate of convenience and necessity was void — injunction granted.

In this action to restrain the defendant from operating a bus line over a route in competition with the plaintiff it appears that the defendant obtained a certificate of convenience and necessity from the Public Service Commission in 1913 without any notice to the plaintiff, a competing carrier, and that after operating for a few months suspended operations until 1926.   A proper construction of sections 23 and 53 of the Public Service Commissions Law as it existed in 1913 is that the plaintiff was entitled to notice of the application for a certificate of convenience and necessity and that the granting thereof without notice made the certificate void.   The plaintiff is entitled to a permanent injunction.

The plaintiff was not required to review the action of the Public Service Commission by certiorari but had the right to proceed in the Supreme Court for an injunction to stop the illegal operation of defendant's buses.

ACTION by the plaintiff to permanently enjoin the defendant from operating a bus line, stage route or motor vehicle line or

842    HUDSON VALLEY R. CO. *v.* UNITED TRANSPORTATION CO., INC.

Supreme Court, August, 1926.                    [Vol. 127

route, or vehicles carrying passengers for hire, in competition with the plaintiff, in, upon and along any of the streets, highways or public places of the city of Mechanicville, N. Y.

*James McPhillips* [*C. E. Fitzgerald* of counsel], for the plaintiff.

*Snyder & Freedman* [*William E. Woollard* and *Louis J. Rezzemini* of counsel], for the defendant.

HEFFERNAN, J.    After the commencement of the action, and on notice to the defendant, the plaintiff obtained from this court at Special Term an order enjoining the defendant's bus line *pendente lite* and, upon appeal, that was unanimously affirmed by the Appellate Division (217 App. Div. 708). An inspection of the record and briefs discloses that the same questions of law that are presented here were argued before the appellate court upon precisely the same facts with the single exception that upon the trial the defendant made proof that it operated a bus, one trip a day, over the route in question between July 1, 1914, and September 1, 1914.

For more than twenty years plaintiff has been a domestic railway corporation engaged in the operation of an electric street surface railway as a common carrier of persons and property for hire, among other places upon various public streets in the city of Mechanicville. It maintains a double-track system along the entire length of Main street which is the principal public thoroughfare in that city. This street extends from the northerly to the southerly limits of the municipality, is paved with brick, and the plaintiff has paid its proportionate share of the cost of that improvement. The plaintiff's railway also extends southerly from this city through the towns of Halfmoon and Waterford to the village of Waterford, and by agreement with the United Traction Company, its cars are operated over the tracks of that company from Waterford to Troy. Heretofore the plaintiff obtained from the authorities of the village of Mechanicville, the predecessor of the city, a consent to operate its railway system therein. It has also obtained from the Public Service Commission, or its predecessor in authority, a certificate of public convenience and necessity for the same purpose, and it is now operating and has always operated its railroad pursuant to authority of the Public Service Commission and its predecessors. About 400 feet south of the intersection of Main street with Park avenue in Mechanicville, the plaintiff maintains a waiting room for passengers. The distance from Park avenue to the southerly limits of the city is approximately a mile. Between Mechanicville and the village of Waterford, a distance of about nine miles, the plaintiff's railway is at all points either upon or in close proximity to the public highway and State road

by which the city and village are connected.   The plaintiff maintains an hourly service on its railway in Mechanicville in each direction for eighteen hours a day.

The defendant was incorporated pursuant to the provisions of article IV, section 20, of the Transportation Corporations Law.* In 1913 it applied to the Public Service Commission for a certificate of convenience and necessity for the operation of a stage route or auto bus line, among other places, between the city of Troy and the village of Lake George, passing through the villages and hamlets of Waterford, Mechanicville, Willow Glen, Maltaville, Malta, Saratoga Springs, South Greenfield, Greenfield Center, North Greenfield, South Corinth, Corinth, Hadley and Luzerne.   Pursuant to an order of the Commission, hearings were had before it in connection with this application on August 13 and 20, 1913. On November 26, 1913, the defendant's application was granted and the usual certificate of convenience and necessity for the operation of such bus line was issued.   No notice of defendant's application for such a certificate was given to the plaintiff nor was the plaintiff apprised of the hearings thereon.

About July 1, 1914, the defendant commenced operating a bus and carrying passengers for hire over the public highways between Troy and Lake George, and return, one trip a day, passing on each trip through the then village of Mechanicville, and it continued to so operate such bus daily until on or about September 1, 1914, from which latter date until about March 25, 1926, it suspended operations of its bus over this route.   It does not appear that during such period it exercised in any way any of its rights in connection with its franchise.

The village of Mechanicville was incorporated as a city pursuant to chapter 170 of the Laws of 1915.   It is conceded that the defendant never applied for or obtained from the city of Mechanicville the consent of the local authorities to operate its buses through the public streets of such city.

About March 25, 1926, the defendant again commenced the operation of its buses along Main street in Mechanicville from plaintiff's waiting room to the south line of the city, and thence to Waterford and Troy.   For this purpose it used three automobile buses known as White trucks, each with a seating capacity of twenty-nine passengers, making several trips daily.   These buses carried passengers for hire in competition with the plaintiff from points within to points outside the city of Mechanicville, and *vice versa*.   The defendant's operation continued until the restraining order was issued.

---

* Since amd. by Laws of 1921, chap. 256, and Laws of 1926, chap. 762.

The plaintiff's theory in this suit is that the certificate of public convenience and necessity granted by the Public Service Commission to the defendant is illegal and void because it received no notice of its issuance and because it was afforded no opportunity to be heard on the application for the grant. The defendant contends that no provision of law as it existed in 1913 required notice to plaintiff of defendant's application for such a certificate, and that in any event the certificate having been granted, its legality cannot be attacked in this action. The answer to these contentions involves a construction of the provisions of the Transportation Corporations Law and the Public Service Commissions Law. Section 20 of the statute under which the defendant was incorporated provides, in substance, that five or more persons may become a corporation for the purpose of establishing, maintaining and operating any stage or omnibus route or routes for the conveyance of persons and property elsewhere than in· the city of New York, and contains provisions for the making and filing of the certificate for that purpose. The original enactment is found in chapter 566 of the Laws of 1890. Section 22 of the same article defines the powers of such a corporation and authorizes the conveyance of persons and property in stages and omnibuses and provides that it shall receive compensation therefor. By chapter 657 of the Laws of 1900 section 23 was added, and by its provisions any corporation owning or operating a stage route, and which had been continuously operating for five years in any city, was authorized to extend its existing routes at any time and to operate the same as extended with stages and omnibuses propelled by electricity or any other motive power in and upon any streets and highways of such city without further or other authority required under any act, general, public, private or local, provided that such extensions should not become valid until approved by the Public Service Commission. In 1909 section 24 was added providing that any person or corporation owning or operating any stage route in a city of 1,000,000 inhabitants or more should be deemed to be included within the meaning of the term " common carrier," as used in the Public Service Commissions Law, and subject to all the provisions of law applicable to common carriers. This was the first attempt of the Legislature to place persons, aside from corporations operating such routes, under the supervision of the Public Service Commission. Section 25 was added to the Transportation Corporations Law by chapter 495 of the Laws of 1913, and contained a provision that any person or corporation owning or operating a stage route, bus line or motor vehicle line or route, wholly or partly upon and along any .treet, avenue or

public place in any city, should be deemed to be included within the meaning of the term " common carrier " as used in the Public Service Commissions Law, and should be required to obtain a certificate of convenience and necessity for the operation of the same and subject to all the provisions of law applicable to common carriers. This section was amended by chapter 667 of the Laws of 1915. By the same chapter section 26 was added, and by the terms of this section, cities of the second and third class were authorized to prescribe conditions on which bus or motor vehicle lines should operate over their streets and that no certificate of public convenience and necessity should be issued to them by the Public Service Commission until the local authorities had consented thereto. By chapter 307 of the Laws of 1919 section 26 was amended and the provisions thereof were extended to incorporated villages and towns, and they were authorized to adopt resolutions bringing themselves within the provisions of the law. The various sections of the Transportation Corporations Law, to which reference has been made, have since been amended by chapter 762 of the Laws of 1926.

In 1913, as a condition precedent to the operation of the bus line, the defendant was required to obtain a certificate of convenience and necessity from the Public Service Commission. Section 23 of the Public Service Commissions Law as it then existed provided (Laws of 1909, chap. 429): " Service and effect of orders. Every order of a commission shall be served upon every person or corporation to be affected thereby, either by personal delivery of a certified copy thereof, or by mailing a certified copy thereof, in a sealed package with postage prepaid, to the person to be affected thereby or, in the case of a corporation, to any officer or agent thereof upon whom a summons may be served in accordance with the provisions of the code of civil procedure."

Relative to the hearing in connection with such an application, section 53 of the Public Service Commissions Law as then existent provided that the Commission " shall have power to grant the permission and approval herein specified whenever it shall after due hearing determine that such construction or such exercise of the franchise or privilege is necessary or convenient for the public service."

The hearings upon the defendant's application for the certificate of convenience and necessity were initiated by an order of the Public Service Commission. The plaintiff had no notice of the pendency of these proceedings. It cannot be doubted that the operations of the defendant's bus line seriously affect the operations of plaintiff's railroad system. The question is, therefore, directly

presented whether under such circumstances the plaintiff was entitled to notice of defendant's application for a certificate of public convenience and necessity as a common carrier over a route in direct competition with plaintiff. It is obvious that the material question which the Commission was required to determine in connection with this application was whether public convenience and necessity required or justified the operation of a bus line or stage route by the defendant, paralleling the route of the plaintiff's railway. The fundamental purpose of the enactment was to require the Commission to determine whether public considerations warranted the operation of a bus line over this route and to prevent ruinous competition in localities that were already adequately served. It is idle to argue that the franchise which the defendant secured works no injury to the plaintiff. It cannot be gainsaid that the plaintiff suffers special damage from this competition. By that franchise another common carrier was authorized to operate a system in competition with the plaintiff for the conveyance of persons and property along the streets of the city of Mechanicville, over which the plaintiff was then operating its electric surface railway. Surely the plaintiff's interests are vitally affected by the granting of that certificate. The Commission had power to grant the defendant's application only " *after due hearing.*" As we have already seen, section 23 of the Public Service Commissions Law provides that when such an order is made it " *shall be served upon every person or corporation to be affected thereby.*" Bearing in mind the purpose of the enactment, the provisions of these statutes are susceptible of but one construction and that is that all interested parties are entitled to notice and an opportunity to be heard before such a franchise could be granted. Clearly, the plaintiff was an interested party in the grant for which the defendant applied and which it received from the Public Service Commission. It is true that, by statute, this Commission is vested with exclusive original jurisdiction in all matters relating to common carriers. Notwithstanding that, it is a tribunal of special and limited jurisdiction. The nature, extent and exercise of this jurisdiction depend on the statutory grant. It cannot exercise any powers other than those which have been expressly conferred upon it or which are necessarily implied from those expressly conferred, and its power is not to be extended by construction or by unnecessary implication. It must act strictly within the limits of its jurisdiction and any departure therefrom is usurpation of power that imparts no validity whatever to its decree. Lacking jurisdiction, its determination is void to every intent and for every purpose, and should be so declared by any court to which it is presented.

The exercise of jurisdiction by that body does not raise a presumption of the existence of the requisite jurisdictional facts, for nothing is presumed to be within the jurisdiction of such a body, and one who relies on its order or decree, or who claims any right or benefit under its proceedings, must affirmatively show its jurisdiction. If jurisdiction of the person and subject-matter is made to appear on the face of the proceeding then, of course, the maxim *omnia præsumuntur rite esse acta* applies. The Commission could only acquire jurisdiction of the defendant's application upon compliance by it with the provisions of the statute. That statute requires that it give " due hearing " upon such an application. To effectuate this provision of law, notice was required to all parties interested who might be affected by the result. The plaintiff, as a competing carrier, was entitled to notice of the hearing. Jurisdiction by the Commission of plaintiff depended upon notice to it. Service of a copy of the order of the time and place of hearing was a necessary prerequisite to such jurisdiction. When the Commission acted, in the absence of such a notice to the plaintiff, and granted a franchise which vitally affects the plaintiff's interests, then it transcended its powers. It was essential before the Commission could act, not only that it should have jurisdiction of the subject-matter, but it must also appear that jurisdiction should be shown with respect to the plaintiff. In this instance the want of jurisdiction of plaintiff is apparent on the face of the proceedings. Without notice to the plaintiff, without an opportunity to its day in court, the Commission assumed to hear and determine the defendant's application. It had no authority to do so. Lacking that authority to hear and determine, its adjudication is a nullity.

I am not impressed with the argument of the defendant that the regularity of the proceedings before the Public Service Commission cannot be attacked in this court and that the plaintiff's only remedy is by certiorari to review the judgment of the Commission, or by an application to such body for a rehearing. The objection to jurisdiction may be raised directly or collaterally whenever and wherever the power of the tribunal making the order or decree is brought in question. A franchise which seriously threatens plaintiff's corporate existence, a franchise which, under the circumstances disclosed in this record, the Public Service Commission could not lawfully grant, a franchise which has no binding efficacy, has been awarded by that body to plaintiff's competitor. It will not do to say that the plaintiff must go back to that tribunal to right the wrong. It is entitled in a court of competent jurisdiction to challenge any benefit, privilege or advantage founded on the invalid

grant. For that purpose it has come into the Supreme Court of the State, a court to which it has a legal and a constitutional right to come, asking for redress and it should not be denied relief merely because the authority which made the void decree has jurisdiction to rectify the error. This court should not hesitate to condemn and annul a determination of the Commission whenever it has pronounced a judgment without power. Public policy neither requires nor justifies any other result. I see no reason to depart from that practice in this case. So far as the plaintiff is concerned, the Public Service Commission exceeded its power in granting the franchise and consequently it is absolutely void and it is so declared.

There are other questions presented in the briefs of counsel, but in view of the conclusion which I have reached, it is unnecessary to discuss them here.

The plaintiff is entitled to the relief prayed for in its complaint, and judgment is hereby directed accordingly.