UNITED TRANSPORTATION Co., INC., Appellant, *v.* WILLIAM A. GLENN, Trustee in Bankruptcy of CHARLES D. ALLEN, Respondent.

Third Department, January 16, 1929.

*Snyder & Freedman* [*Louis J. Rezzemini* of counsel], for the appellant.

*Hun, Parker & Reilly* [*Michael D. Reilly* and *Herbert D. Hamm* of counsel], for the respondent.

HINMAN, J. In 1913 the plaintiff obtained from the Public Service Commission a certificate of convenience and necessity to operate a bus line over a route from the city of Troy, N. Y., through Waterford, Mechanicville, Maltaville and Saratoga. The plaintiff operated under this certificate for a brief period and then discontinued. The line was not operated between 1914 and March, 1926. On March 15, 1926, the plaintiff and Allen entered into a contract which gave rise to the two notes in suit. In the first part of the contract, in consideration of these two notes, the plaintiff gave to Allen the right to use this bus line in plaintiff's name from March 15, 1926, to July 1, 1926, and also " any interest that the said company [plaintiff] may now have in said certificate." In the second part, the contract afforded to Allen or his assigns the right to continue to use the franchise in plaintiff's name after July 1, 1926, in the event that Allen should fail to obtain the consent of the Public Service Commission to a transfer of the certificate of convenience and necessity. In such event, he was to pay monthly the sum of eighty-three dollars and thirty-four cents for a period of ten years beginning July 1, 1926, with an option of renewal.

Allen paid one note for $1,500 when it became due on March

31, 1926. He failed to pay the other note for $1,000 when due on June 15, 1926, and also a renewal thereof, given August 16, 1926, which included an additional sum of $83.34 for one month rental of the franchise under the second part of the contract. Allen operated buses from about the middle of March until April twenty-first over the whole route from Troy to Saratoga. On April twenty-first he was restrained by temporary injunction from operating in Mechanicville, which was about the center of the route. This injunction was obtained by the Hudson Valley Railway Company, a competing carrier. We affirmed this order (*Hudson Valley R. Co.* v. *United Transportation Co.*, 217 App. Div. 708). For a time Allen operated through Mechanicville with bus doors closed. He was forced, however, by a contempt proceeding to discontinue passing through Mechanicville and for several weeks prior to July 28, 1926, he divided his route into two parts, each ending at the outskirts of Mechanicville. Shortly after June fifteenth the plaintiff offered to Allen to take the line back and refund the first payment he had made. Allen declined and said he was willing to keep the line as it was. He wanted to continue to operate the line in plaintiff's name under the second part of the agreement. On June twenty-first Allen gave to plaintiff a bond to protect the company against loss or liability, as agreed to in the contract. On July 28, 1926, Allen discontinued all operations. On September 8, 1926, a final judgment was rendered in the injunction suit declaring that plaintiff's certificate of convenience and necessity was void *ab initio* for failure to give notice to a competing carrier. (*Hudson Valley Railway Co.* v. *United Transportation Co., Inc.*, 127 Misc. 841.) The second note for $1,000, as finally renewed, became due September fifteenth. Payment was demanded and refused. This action on that note was begun September twenty-first and in due time defendant answered, denying liability on that note for failure of consideration and demanding, for the same reason, recovery of the first payment. The defendant has succeeded below.

The contract under which the notes were given contained this provision: " The intention of this agreement is to allow the said Charles D. Allen to operate said line and merely use the name of the United Transportation Co., Inc., for said operation and use of certificate of convenience and necessity and not for the purpose of securing any credit or contract any debts or liabilities whatsoever, and that the consideration therefor is the payment of the notes hereinbefore mentioned and the renewal for the term thereafter." Thus the principal part of the consideration for the notes was the use of the certificate for operation of the line. The expression " any

interest that the said company may now have in said certificate "
and certain other stipulations by which Allen obligated himself to
defend actions brought against the company and that the company
should not be responsible for any damages sustained by Allen by
any alteration, revocation, amendment or other change in the
certificate of convenience and necessity, indicate that there was
some apprehension that there might be dispute as to the validity
of the certificate. But this is explained in the evidence as having
reference to possible invalidity on account of non-user from 1914
to 1926. No question of invalidity on account of failure to give
notice of the application for the certificate to any competing carrier
was ever mentioned between the parties prior to the granting of
the temporary injunction. The notes were given chiefly for the
right to use the line and to operate under the name of the plaintiff.
This use, provided the defendant could not procure the consent
to operate in his own name, was to continue for a period of ten
years, with right to renewal. The plaintiff did not represent that
it could transfer its certificate, but rather that it would, if it could.
Allen never formally applied to the Commission for such consent.
Apparently neither party was confident or had ground to believe
that such transfer could be made and it never was made. Allen
actually began to operate under the second part of the contract,
providing for a ten-year lease at eighty-three dollars and thirty-
four cents a month, beginning July 1, 1926, and in renewing the
one-thousand dollar note he included eighty-three dollars and
thirty-four cents for July or August rental. Allen continued to
use the line even after the temporary injunction was granted on a
ground not anticipated, and even though the plaintiff offered him
the privilege of abandoning the line and of receiving back the
payment he had made. While he ceased to operate on July twenty-
eighth, he did not repudiate his obligation on the second note until
after the final decision in the injunction suit. He apparently
believed the result of the suit would be favorable to him. He
admits that he derived income from the operation of the line.
Even after the temporary injunction, the greater part of the line
was open to use. Presumably he profited thereby. The record
does not reveal the amount of his financial benefit. Under the
terms of the agreement he was to keep an accurate account of all
the proceeds from operating the line. He has not revealed his
accounts nor has he returned or tendered anything of value received
by him under the agreement. Whatever benefit he has received
was obtained by the use of the plaintiff's name and certificate.
The certificate conferred upon him at least the color of right
without which he would never have been permitted without molesta-

tion to operate the buses. Such a party will not be heard to say, while retaining such profits, that the consideration for the agreement and the notes wholly failed. (*Farnsworth* v. *Boro Oil & Gas Co.*, 216 N. Y. 40, 46.) There was not a total failure of consideration for the notes, and the defendant does not make a case for the cancellation of the contract, dismissal of the complaint and recovery on his counterclaim for the amount he has paid. Therefore, the judgment cannot stand.

His remedy was a defense to the note sued on based upon a partial failure of consideration. (Neg. Inst. Law, § 54; *Payne* v. *Ladue*, 1 Hill, 116; *Sawyer* v. *Chambers*, 43 Barb. 622; *Earl* v. *Peck*, 64 N. Y. 596; 8 C. J. 751.) The burden of proof as to such defense of partial failure of consideration was upon the defendant and rested on him to the end of the case. (Neg. Inst. Law, §§ 50, 54; *Conforti Construction Co., Inc.,* v. *Neek Realty Corp.*, 125 Misc. 876, 882; 2 Williston Cont. 2129, footnote 86.) The defendant's remedy as to the amount paid on the other note may be a counterclaim in the nature of assumpsit, for money had and received by mistake, deducting therefrom, however, the profits realized by the defendant from the operation of the buses during the time of the performance of the agreement. (*Day* v. *New York Central R. R. Co.*, 51 N. Y. 583.) The defendant has not sustained the burden of proof, because he failed to produce any evidence whereby the court can determine his profits or otherwise fix the value of the benefit he received during the period of operation under the contract. When the franchise was declared void, the defendant was deprived of a substantial part of his bargain; but the franchise, though void, was actually used and we may assume that this use resulted in profits to the defendant. That being so, the *de facto* franchise must have had some value. We do not know whether his profits were equal to or less than the amount of these two notes. Such profits may have been slight but the defendant received something for his money. That value must be offset against the notes. From the record before us no findings can be made which would sustain a proper judgment.

The judgment should be reversed upon the law and the facts, and a new trial granted, with costs to the appellant to abide the event.

VAN KIRK, P. J., DAVIS, WHITMYER and HILL, JJ., concur.

Judgment reversed on the law and facts, and new trial granted, with costs to the appellant to abide the event.

The court disapproves the twelfth finding of fact, and finds that the assignment of the certificate of convenience and necessity was not the sole consideration for the agreement and notes.